* * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Holmes and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Holmes, with modifications.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing in a Pre-Trial Agreement and at the hearing as: *Page 2 
 STIPULATIONS
1. The parties are subject to the North Carolina Workers' Compensation Act.
2. An employee-employer relationship existed between the named employee and the named employer.
3. The employee alleges an injury on or about June 13, 2003.
4. The plaintiff's average weekly wage was $707.18, yielding a compensation rate of $471.48.
 * * * * * * * * * * *
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. The plaintiff was twenty-eight years old at the time of hearing before the Deputy Commissioner, and has a GED. He has experience working as a truck driver, mainly in North Carolina, and holds a commercial drivers' license.
2. The plaintiff only worked for the defendant-employer for about a month before his alleged date of injury. In working as a truck driver for the defendant-employer, the plaintiff usually hauled loads of pre-packaged salads from a facility in Halifax, North Carolina. He would call his supervisor and dispatcher, Mr. Kenny Sewell, each day to talk about his loads. The plaintiff would then drive the truck from his home to Reese's Warehouse in Halifax, North Carolina, pick up a loaded trailer, and make deliveries in various locales.
3. When the plaintiff arrived at a delivery location, he could choose to unload the truck himself or have someone at the location unload the truck for him. If the plaintiff unloaded the truck, *Page 3 
which he estimated required lifting up to around thirty pounds, he made additional money per load. The plaintiff testified that he would unload his truck sometimes, and sometimes he would have others unload it. He further testified that when he had a big load, he usually had the "lumpers," or un-loaders, at the various centers do the un-loading. The plaintiff parked his truck at his home during the week and on the weekends.
4. On or about Friday, June 13, 2003, the plaintiff unloaded his truck at the Food Lion in Salisbury, North Carolina. The plaintiff testified that it was hot outside, and as a result, the refrigerated truck unit accumulated condensation on the floor because of the heat and cold. Food Lion's method of unloading required him to use a hand truck, and as he was coming out of the truck with a pallet, he pulled on the pallet and slipped, causing him to land on his hands in an awkward position. The plaintiff testified that he did not really hurt then, but did feel a soreness in his low back and right leg that he thought would resolve. His brother had been riding with the plaintiff that day, but was off getting another pair of gloves, so he did not witness the alleged event. The plaintiff testified that he went to Urgent Care following the incident, but there are no records in the stipulated medical exhibit reflecting those visits.
5. The medical records in evidence show that the plaintiff presented to the Bladen County Hospital, in his hometown of Elizabethtown, North Carolina, complaining of right leg pain on June 21, 2003. He reported that he had experienced pain in his right leg for the past three months, which he first experienced while jogging three months earlier. On this occasion, the plaintiff reported his pain as a 10 on a scale of 1-10, and walked with a limp. The attending provider did not note that the plaintiff had reported a work-related incident occurring on June 13, 2003. *Page 4 
6. In his recorded statement of October 8, 2003, the plaintiff denied experiencing any similar injury prior to June 13, 2003, and claimed that his right leg and back pain arose from his alleged slip and fall at work. He did not disclose his June 21, 2003 reports of right leg pain due to jogging at Bladen County Hospital.
7. Kenny Sewell, the plaintiff's dispatcher and supervisor, testified that sometime in June 2003, the plaintiff called and said that his leg was bothering him. The plaintiff did not request any time off from work, and did not indicate that he had injured his leg or back through his employment. Thereafter, on Monday, June 23, 2003, the plaintiff called Mr. Sewell and informed him that he had been to the hospital and been advised that he had a strained muscle in his back. Again, the plaintiff failed to mention that the alleged injury was related to his work and he continued to work for another few days. The plaintiff next called Mr. Sewell on Tuesday or Wednesday indicating he could not work. Mr. Sewell told the plaintiff to take a few days off. The plaintiff emptied his truck on Wednesday June 25, 2003, and did not work on Thursday, Friday, Saturday or Sunday. The plaintiff called Mr. Sewell on Friday, June 27, 2003, and told him that he was ready to go and felt fine. Mr. Sewell said that he would have the truck ready and loaded on Monday of the following week. During his conversation, the plaintiff did not mention that he believed his alleged injury was related to his work with the defendant-employer. On Monday, June 30, 2003, the plaintiff picked up a loaded truck and worked for the following two weeks. Mr. Sewell testified that during that time he did not hear from the plaintiff about ongoing back or leg pain or any relation of that alleged pain to his work injury.
8. The medical evidence shows that the plaintiff next presented for medical care on July 12, 2003, again at the Bladen County Hospital. On that visit, he reported pain in his right leg and back, this time claiming that he had pulled his right leg on the job about a month earlier instead of his prior *Page 5 
claim that the pain had developed from jogging over the past three months. Although he reported that the muscle relaxants and Motrin that he had taken since his June 21, 2003 visit had provided no relief, the providers at Bladen County did not prescribe any additional medication at that time. Later that afternoon, the plaintiff presented to Southeastern Regional Hospital ER in Lumberton, North Carolina. He reported pain in his right leg over the past month, and reported he had been seen for the same condition on June 21, 2003 (when he reported leg pain from jogging) and had been using muscle relaxants and Motrin since that time. The providers at Southeastern Regional diagnosed sciatica and prescribed Percocet.
9. On July 13, 2003, the plaintiff called Mr. Sewell explaining that he had been to the hospital and advised he had a ruptured disc and could not work. Again, during that conversation, the plaintiff did not relate the ruptured disc or any of his ongoing pain to an alleged work injury. Mr. Sewell testified that the plaintiff told him he was unsure how he had injured himself.
10. On July 23, 2003, the plaintiff saw family physician, Dr. S. C. Enojado, who ordered an MRI of the lumbar spine. The MRI revealed a herniated disc at L5-S1.
11. The plaintiff then began treatment with neurosurgeon, Dr. Adam Brown on August 26, 2003. Dr. Brown performed microdiskectomy surgery to address the herniated disc on September 8, 2003, and the plaintiff was discharged the next day.
12. On October 21, 2003, the plaintiff followed up with Dr. Brown for a post-op visit, and was instructed to call in two weeks to discuss return to work issues, and then follow up after two months. The plaintiff did not call after two weeks, and did not return to Dr. Brown until February 5, 2004, at which time he reported he was reluctant to return to heavy work. Dr. Brown ordered a post-operative MRI, and followed up with the plaintiff on April 6, 2004. Dr. Brown did not release the *Page 6 
plaintiff at that time because the plaintiff reported he did not think he was able to return to work. Thereafter, the plaintiff did not return to Dr. Brown's care.
13. Dr. Brown was the only medical expert to testify in this matter. Although Dr. Brown testified in his deposition that, based on the history given to him by the plaintiff, it would seem that the described work incident was the cause of the plaintiff's back condition, he later testified that prior to the deposition, he was unaware that the plaintiff reported to Bladen County Hospital on June 21, 2003 complaining of right leg pain due to jogging. When asked whether the plaintiff's June 21, 2003 reports of right leg pain while jogging over the past several months would change his opinion on causation, Dr. Brown was of the opinion that such information "certainly is suggestive that he injured his back before this (alleged work) incident." As such, Dr. Brown opined that Plaintiff's jogging could have been part of the cause of his back condition, and that he could not rule out Plaintiff's report of right leg pain while jogging as the cause of the herniation.
14. Having considered the totality of the evidence of record, the Full Commission finds the plaintiff has failed to meet his burden of proving he suffered a compensable injury by accident or specific traumatic incident on June 13, 2003, especially in light of the fact that there were no witnesses; the plaintiff did not report the alleged slip and fall when he presented for medical treatment for right leg pain on June 21, 2003; he did report pain due to jogging over the past three months when he presented for medical treatment for right leg pain; and, despite several conversations with the employer regarding his condition, he did not report a work-related injury until July 14, 2003.
15. The plaintiff returned to work in June 2004, and has worked since that time at or above his previous earnings.
 * * * * * * * * * * * *Page 7 
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. The plaintiff has failed to meet his burden of proving he suffered a compensable injury by accident or specific traumatic incident on June 13, 2003. N.C. Gen. Stat. § 97-2(6).
2. In cases involving complicated medical questions far removed from the ordinary experience and knowledge of laymen, only an expert can give competent opinion evidence as to the cause of the injury. When such expert opinion testimony is based merely upon speculation and conjecture it is not sufficiently reliable to qualify as competent evidence on issues of medical causation. The evidence must be such as to take the case out of the realm of conjecture and remote possibility, that is, there must be sufficient competent evidence tending to show a proximate causal relation. Holly v. Acts, Inc., 357 N.C. 228, 581 S.E.2d 750
(2003). The plaintiff has failed to prove that his back condition was caused by or aggravated by his alleged injury by accident on June 13, 2003. See Id.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. The plaintiff's claim for workers' compensation is DENIED.
2. Each side shall pay its own costs, except the defendants shall pay an expert witness fee of $425.00 to Dr. Adam Brown if not paid by prior order.
3. Any claim for attorney fees from either party is DENIED.
 This 10th day of January 2006. *Page 8 
 S/________________________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/________________________ THOMAS J. BOLCH COMMISSIONER
 S/________________________ BUCK LATTIMORE CHAIRMAN *Page 1